ELECTRONIC CITATION: 2010 FED App. 0002P (6th Cir.)
File Name: 10b0002p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re: NANCY E. DICKSON, <br><br> Debtor. <br>_____ <br><br> COUNTRYWIDE HOME LOANS d/b/a <br> AMERICA'S WHOLESALE LENDER, <br><br> Defendant-Appellant, <br><br> v. <br><br> NANCY E. DICKSON, <br><br> Plaintiff-Appellee. <br>_____ | No. 09-8034 |

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky.
Case No. 07-51364, Adversary Proceeding No. 07-05073.

Argued: February 3, 2010

Decided and Filed: April 12, 2010

Before: FULTON, McIVOR, SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** John P. Brice, WYATT, TARRANT & COMBS, LLP, Lexington, Kentucky, for Appellant. Jon J. Lieberman, Cincinnati, Ohio, for Appellee. **ON BRIEF:** John P. Brice, WYATT, TARRANT & COMBS, LLP, Lexington, Kentucky, for Appellant. John M. Simms, Lexington, Kentucky, for Appellee.

## OPINION

THOMAS H. FULTON, Chief Bankruptcy Appellate Panel Judge. Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender ("Countrywide") appeals a judgment in favor of Nancy Dickson (the "Debtor") finding that the Debtor had standing to seek to avoid Countrywide's lien on the Debtor's manufactured home, and avoiding Countrywide's lien. Countrywide also appeals the bankruptcy court's subsequent order that largely overruled Countrywide's Motion to Amend Findings of Fact and Conclusions of Law and to Alter, Amend, or Vacate the Judgment, and sustained the Debtor's motion *nunc pro tunc* for derivative standing.

For the reasons stated below, the Panel affirms the bankruptcy court's judgment in favor of the Appellee.

### I. ISSUES ON APPEAL

Countrywide raises two issues in this appeal: (1) whether the Debtor had standing to bring an adversary proceeding to avoid Countrywide's lien on her manufactured home; and (2) whether Countrywide's lien was properly avoided.

### II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel has jurisdiction to decide this appeal, as authorized by the United States District Court for the Eastern District of Kentucky. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right. 28 U.S.C. § 158(a)(1). For the purpose of an appeal, a final order is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. U.S.*, 489 U.S. 794, 798; 109 S.Ct. 1494, 1497 (1989) (internal quotation & citation omitted).

Countrywide challenges certain of the bankruptcy court's conclusions of law. A bankruptcy court's conclusions of law are reviewed *de novo*. *Moran v. LTV Steel Co. (In re LTV Steel Co., Inc.)*, 560 F.3d 449 (6th Cir. 2009). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Buckeye Check*

*Cashing, Inc. v. Meadows (In re Meadows)*, 396 B.R. 485, 488 (B.A.P. 6th Cir. 2008) (internal quotation & citation omitted).

### III. FACTS

On September 19, 1998, Debtor executed a promissory note and mortgage on her real property, which she had purchased in 1997, in consideration for a $79,000 loan from Countrywide. At the time the promissory note and mortgage were executed there were no improvements on the mortgaged real property. The mortgage in favor of Countrywide stated that Countrywide was granted a lien against the real property and "all improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of that property." The mortgage was duly and properly recorded with the Harrison County Clerk on September 22, 1998. The Debtor then used the proceeds of the loan to purchase a manufactured home which she placed on the mortgaged real property.

On March 22, 1999, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. On May 13, 1999, the Chapter 7 trustee filed a notice of intent to abandon both the manufactured home and the real property. The Debtor was granted a Chapter 7 discharge on September 8, 1999, and the bankruptcy court entered its Final Decree on September 13, 1999. The Debtor did not reaffirm the debt with Countrywide.

Subsequently, the Debtor defaulted on the loan with Countrywide. As a result, Countrywide initiated foreclosure proceedings on June 15, 2006, in the Commonwealth of Kentucky Harrison Circuit Court ("State Court"). Countrywide's complaint in the State Court asserted that the Debtor granted Countrywide a security interest in both the real property and the manufactured home. Countrywide asserted in its complaint that while the parties intended the mortgage to secure a valid, first lien on the manufactured home, the Debtor failed to surrender the title to the manufactured home preventing Countrywide from noting its lien on the title. Countrywide sought a judgment from the State Court that it had a valid lien on the home, as well as an order that the home be deemed a fixture on the property and sold in satisfaction of its lien. On July 13, 2006, Countrywide filed a notice of *lis pendens* in the office of the Harrison County Clerk which specifically referenced the manufactured home.

On May 25, 2007, Countrywide filed a motion for *In Rem* Judgment in the State Court foreclosure proceeding. In its motion, Countrywide acknowledged that it had not noted its lien on the certificate of title nor obtained an affidavit of conversion of the manufactured home to real property in accordance with Kentucky Revised Statute § 186A.297.[1] The motion further sought a judgment from the State Court ordering that the property be deemed converted to real property and sold as part of the real property to satisfy Countrywide's lien. The Debtor did not oppose Countrywide's motion. On June 6, 2007, the State Court granted the *In Rem* motion and issued an order finding that Countrywide held a first priority and superior lien against the real property, that the real property be sold to satisfy Countrywide's lien, and that the manufactured home be "deemed converted to real estate and considered to comply with K.R.S 186A.297." The State Court judgment also ordered that the "County Clerk shall accept for recording an affidavit of conversion from the purchaser of the property, and this Court's order converting the home to real estate, herein. Alternatively, the Clerk shall issue a new certificate of title to the purchaser of the property." The Debtor did not appeal the State Court judgment.

On July 16, 2007, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. Countrywide filed a motion for relief from stay seeking to sell the Debtor's property. The Debtor and the Chapter 13 trustee ("Trustee") opposed Countrywide's motion on the grounds that Countrywide failed properly to perfect its lien on the manufactured home. On October 9, 2007, the bankruptcy court issued an order granting the Trustee thirty days in which to file an adversary proceeding to determine the interest of Countrywide. The bankruptcy court further ordered that if the Trustee did not file such an adversary proceeding, the Debtor would then have an additional fifteen days to do so. If no adversary was filed, the stay would be lifted.

The Trustee did not file an adversary proceeding. The Debtor, therefore, filed an adversary complaint pursuant to 11 U.S.C. §§ 544, 547, 550, and 551 on November 14, 2007, in which she asserted that Countrywide did not properly perfect its lien on her manufactured home. On March 20, 2008, Countrywide filed a motion for summary judgment in which it asserted that the Debtor lacked standing to bring the adversary proceeding because the mortgage lien was consensual and she

---

[1] K.R.S. § 186A.297 provides the means to convert a manufactured home to an improvement to the real estate upon which it is located. The owner must execute an affidavit attesting that the home has been or will be permanently affixed to the real estate and must surrender the certificate of title to the home to the lien holder.

-4-

may not exercise the Trustee's avoidance powers under 11 U.S.C. §544, that the Debtor's claim is barred by res judicata as a result of the actions of the trustee in the Debtor's Chapter 7 case in relation to her property, that the *lis pendens* filing provided the Debtor with constructive notice of Countrywide's lien preventing avoidance, and finally, that the prior State Court judgment prevented avoidance of Countrywide's lien. The Debtor responded with a cross motion for summary judgment in which she asserted that she had standing as a result of the bankruptcy court's October 9, 2007 order and Countrywide's failure to object to same, that her prior bankruptcy case did not have res judicata effect, that Countrywide's lien on the manufactured home was unperfected because it failed to note its lien on the certificate of title, and that the State Court's judgment did not preclude avoidance of the lien.

Following a hearing on April 29, 2008, the bankruptcy court denied both motions for summary judgment and stated:

> [Countrywide] argues that [Debtor] does not have standing because the mortgage lien is consensual. However, the lien was created by the non-consensual judgment lien; thus, the [Debtor] does have standing.
>
> . . .
>
> This Court finds that whether the Defendant holds a valid lien is determined by the intent of the parties at the time of contract formation and whether the [Debtor] granted [Countrywide] a lien on the mobile home. There is nothing in the record of this case that demonstrates the intent of the parties or the intent of the [Debtor] in not responding to the Motion for *In Rem* Judgment in State Court, nor is there any evidence that the [Debtor] granted a lien to [Countrywide] on the mobile home.

Following the bankruptcy court's ruling on the motions for summary judgment, Countrywide took the Debtor's deposition and questioned her regarding her intention at the time of contract formation. While the Debtor's testimony at that deposition was equivocal regarding her intention to grant a lien to Countrywide on the manufactured home, she ultimately agreed that she was granting a lien on the manufactured home in favor of Countrywide. The deposition of Countrywide's designated representative, Kelly Darraugh, was also taken. Kelly Darraugh testified that neither she, nor anyone else at Countrywide, had direct knowledge of Countrywide's intention regarding the manufactured home at the time of contract formation, nor had she ever seen the certificate of title or an affidavit documenting affixing of the manufactured home to the real estate.

Subsequently, the Debtor and Countrywide filed renewed cross motions for summary judgment and moved, via an agreed order, to submit the matter for determination on briefs as if tried before the court. The bankruptcy court then ordered the parties to submit proposed findings of fact and conclusions of law. On April 30, 2009, the bankruptcy court issued a Judgment Order in which it adopted the Debtor's proposed findings of fact and conclusions of law and entered judgment in favor of the Debtor.[2] The adopted conclusions of law concluded, among other things, that the Debtor had standing, that the only manner in which to perfect a lien on a manufactured home under Kentucky law is by noting the lien on the certificate of title, that Countrywide had failed to perfect its lien, and that even if Countrywide had perfected its lien, such lien was avoidable as a preference.

On May 5, 2008, Countrywide filed a Motion to Amend Findings of Fact and Conclusions of Law and to Alter, Amend, or Vacate the Judgment. In response, the Debtor filed a motion *nunc pro tunc* for derivative standing. The bankruptcy court granted the Debtor's motion, and largely denied Countrywide's motion, granting it only with respect to amending the Court's findings of fact as to a point not at issue here.

This timely appeal followed.

### IV. DISCUSSION

1. *Did the Debtor Have Standing to Bring an Adversary Proceeding to Avoid Countrywide's Lien on her Manufactured Home?*

The Panel must first determine whether the bankruptcy court properly found that the Debtor had standing to seek to avoid Countrywide's lien. The bankruptcy court concluded that the Debtor had both direct standing to avoid a "nonconsensual lien," presumably under 11 U.S.C. § 522(h), and derivative standing to avoid Countrywide's lien under either 11 U.S.C. § 544(a) or 11 U.S.C. § 547. The Panel first considers the issue of derivative standing.

Courts are split on whether a Chapter 13 debtor may be granted derivative standing to bring an avoidance action. *See, e.g., Realty Portfolio, Inc. v. Hamilton (In re Hamilton)*, 125 F.3d 292 (5th

---

[2] The court adopted the Debtor's proposed findings of fact and conclusions of law with one minor exception. In the Debtor's Conclusions of Law Section III, the Debtor referred to the "Trustee's complaint" rather than the Debtor's complaint.

Cir. 1997). Although there is no controlling Sixth Circuit case on the issue, the Sixth Circuit Court of Appeals recently held that the Bankruptcy Code allows bankruptcy courts to grant derivative standing to creditors to bring avoidance actions on behalf of the bankruptcy estate in Chapter 11 and Chapter 7 proceedings where the trustee refuses to do so. *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*, 555 F.3d 231 (6th Cir. 2009). Although the case was decided in the specific context of a Chapter 7 bankruptcy case wherein a creditor sought to avoid a fraudulent transfer, the Sixth Circuit in *Hyundai Translead* relied upon principles generally applicable to Chapter 13 debtors and lien avoidance under 11 U.S.C. §§ 544 and 547.[3] For example, the Sixth Circuit stated that:

> The Supreme Court has long recognized that bankruptcy courts are courts of equity with the power to apply flexible equitable remedies in bankruptcy proceedings . . . . We agree with the Third Circuit that "the ability to confer derivative standing . . . is a straightforward application of bankruptcy courts' equitable powers" . . . In § 544(b), Congress clearly intended for bankruptcy estates to recover assets fraudulently transferred by the debtor. To effectuate this intent, Congress authorized the trustee (or debtor-in-possession) to bring avoidance actions to maximize the value of the estate. Typically, the system designed by Congress ensures that the value of the estate is maximized and that creditors' rights are protected because the trustee will pursue valuable avoidance claims. However, when the trustee unjustifiably refuses to bring an avoidance action under § 544(b), the system "breaks down." "It is in precisely this situation that bankruptcy courts' equitable powers are most valuable, for the courts are able to craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain." . . . When the trustee is delinquent, the bankruptcy court-or the district court of which it is a unit-should be able to exercise its equitable powers to authorize a creditor to pursue recovery of fraudulently transferred property for the benefit of the estate. In so doing, this equitable remedy effectuates Congress's intent that fraudulently transferred property be recovered for the bankruptcy estate.

---

[3] The Panel is aware that the Sixth Circuit in *Hyundai Translead* also relied upon textual support from the Bankruptcy Code in allowing derivative standing, specifically the express allowance in 11 U.S.C. § 503(b)(3)(B) of administrative expenses for creditors recovering estate property. Although there is no analogous language expressly giving debtors the power to recover such administrative expenses, the Panel believes that the other Bankruptcy Code provisions discussed herein provide sufficient textual support for finding derivative standing for Chapter 13 debtors.

*Hyundai Translead*, 555 F.3d at 242-43 (quoting *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3rd Cir. 2003) (en banc) (internal citations omitted)).

Moreover, the Sixth Circuit noted that:

> There are also substantial policy reasons for allowing derivative standing in Chapter 7 proceedings. As we noted in *Automated Business Systems*, in contrast to Chapter 11 reorganization proceedings, in Chapter 7 liquidation proceedings there are often "no funds remain[ing] to divide among creditors or to finance a suit to set aside a fraudulent conveyance." ... Consequently, a trustee in Chapter 7 proceedings may decline to pursue meritorious and potentially sizable claims simply because there are inadequate funds in the estate to pay litigation expenses. Indeed, that appears to be the case here. The trustee explained that he "didn't have any money in the case" and that "economics" was part of the reason the he did not pursue the avoidance claims urged by Hyundai.

*Hyundai Translead*, 555 F.3d at 243-44 (quoting *William B. Tanner Co. v. United States (In re Automated Bus. Sys., Inc.)*, 642 F.2d 200 (6th Cir. 1981) (internal citations omitted)).

More so than a Chapter 7 trustee, a Chapter 13 trustee lacks the resources to pursue meritorious avoidance claims. Under 11 U.S.C. § 1306(b), Chapter 13 debtors generally remain in possession of all property of the estate. Under 11 U.S.C. §§ 1303 and 1304, Chapter 13 debtors have the exclusive rights and powers under 11 U.S.C. §§ 363(b)-(f) and (l) to, among other things, sell, lease and use property of the estate. Unlike in a Chapter 7, the Chapter 13 trustee cannot sell estate assets to fund a "war chest" by which to pursue potentially expensive avoidance actions. Thus, the potential for the bankruptcy system to "break down" with respect to avoidance actions will perhaps be greater in the Chapter 13 context than in the Chapter 7 context.

Furthermore, certain provisions of Chapter 13 make it imperative for a debtor to be able to pursue avoidance claims if the Chapter 13 trustee refuses to do so. First, under 11 U.S.C. § 1325(a)(4), a Chapter 13 debtor's plan of reorganization cannot be confirmed unless "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date . . . ." Theoretically at least, the analysis of what would be distributed to unsecured creditors in a hypothetical Chapter 7 liquidation

should assume, among other things, avoidance of preferences, fraudulent conveyances and unperfected liens. Otherwise, an unsecured creditor could argue that the bankruptcy court failed to use a truly hypothetical Chapter 7 liquidation as its benchmark. To meet the liquidation benchmark that assumes lien and transfer avoidance, a Chapter 13 debtor naturally must propose a plan of reorganization that contemplates the *actual* avoidance of such liens and transfers. The Chapter 13 debtor can only do so if he or she is assured that the Chapter 13 trustee will pursue such avoidance or, if the Chapter 13 trustee declines, that he or she can do so on behalf of the estate.[4]

Second, under 11 U.S.C. § 1325(a)(3), a Chapter 13 debtor must propose his or her plan in good faith. A debtor risks being accused of acting in bad faith if an obviously avoidable lien or transfer exists and the debtor does not propose a plan that contemplates avoidance of the same. As discussed above, the Chapter 13 debtor can only do so if he or she knows that the Chapter 13 trustee will pursue avoidance or, if the trustee declines, he or she will be able to do so. Similarly, 11 U.S.C. § 1325(a)(6) requires that the debtor have initiated his or her Chapter 13 case in good faith. Failure of the Chapter 13 debtor to pursue avoidance, either through the Chapter 13 trustee or personally, raises the possibility that the debtor will be accused of having filed his or her petition in bad faith.

Finally, not permitting Chapter 13 debtors to have derivative standing to pursue avoidance claims would be inconsistent with the Bankruptcy Code's claims verification scheme. 11 U.S.C. § 502 permits a "party in interest," including a Chapter 13 debtor, to object to a creditor's proof of claim. *See Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 551 n.3 (5th Cir. 1985) (Chapter 13 debtor is a party in interest for purpose of objecting to claim); *In re Dooley*, 41 B.R. 31 (Bankr. N.D. Ga. 1984) (as a party in interest, Chapter 13 debtor has standing to object to creditor's proof of claim); and *In re Roberts*, 20 B.R. 914, 917 (Bankr. E.D. N.Y. 1982) ("Words would be drained of their ordinary meaning if a debtor were not deemed to be a 'party in interest.'"). 11 U.S.C. § 506 requires bifurcation of claims into secured and unsecured portions. Taken together, 11 U.S.C. §§ 502 and 506 permit a debtor not only to object to the existence or amount of a claim, but whether and to what extent a claim is secured. This system for testing claims by creditors would break down if the Chapter 13 debtor, the driver of the claims verification process in the Chapter 13 context, were

---

[4] In this regard, the Panel notes the contrast with the debtor's avoidance power under 11 U.S.C. § 522(h), where the debtor is acting for the debtor's *personal* benefit, to recapture exempt assets. Thus, giving Chapter 13 debtors derivative standing to pursue avoidance under such provisions as 11 U.S.C. §§ 544 and 547 would not render 11 U.S.C. § 522(h) superfluous.

not permitted to challenge a secured claim on grounds that it was improperly perfected or represented a preferential transfer.

For the foregoing reasons, the Panel concludes that the bankruptcy court properly granted the Debtor derivative standing to pursue lien avoidance under 11 U.S.C. §§ 544 and 547. As further discussed below, the Panel also concludes that Countrywide's lien clearly could be avoided as a preference under 11 U.S.C. § 547. Accordingly, the Panel need not consider whether the Debtor had standing under 11 U.S.C. § 522(h).

### 2. *Was Countrywide's Lien Properly Avoided?*

The parties expended most of their energy debating whether Countrywide's lien was consensual or non-consensual and whether the State Court judgment served to perfect Countrywide's lien; in other words, whether the Debtor could properly avoid the lien under 11 U.S.C. § 522(h) or 11 U.S.C. § 544. The Panel, however, begins its analysis with 11 U.S.C. § 547. If the Debtor could properly avoid the lien under 11 U.S.C. § 547, Countrywide's primary assertions with respect to 11 U.S.C. § 522(h) and 11 U.S.C. § 544--that the lien in question was consensual and that the State Court judgment perfected it--are rendered irrelevant.

The Debtor asserts that, if the State Court judgment in fact perfected Countrywide's lien by equitably converting her manufactured home to real property pursuant to K.R.S. § 186A.297, such perfection constitutes an avoidable preferential transfer under 11 U.S.C. § 547.[5] The Debtor filed her petition for relief on July 16, 2007. The State Court's judgment was entered on June 6, 2007, during the 90 day preference period. Therefore, the Debtor argues, if the State Court's judgment perfected the lien, the transfer occurred within the 90 day preference period and the lien is avoidable pursuant to 11 U.S.C. § 547.

---

[5] 11 U.S.C. § 101(54) provides that the term "transfer" means:
    (A) the creation of a lien;
    (B) the retention of title as a security interest;
    (C) the foreclosure of a debtor's equity of redemption; or
    (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary,
   of disposing of or parting with–
      (i) property; or
      (ii) an interest in property.

Countrywide did not directly address this argument in its opening brief or its reply brief. It did, however, argue in its brief that the lien was perfected, at the latest, upon the filing of the notice of *lis pendens*. The notice of *lis pendens* was filed in July 2006, a full year before the Debtor filed her petition for relief. Therefore, if the date the *lis pendens* notice was filed is the operative date, the transfer did not take place during the 90 day preference period, and is not avoidable pursuant to § 547.

Countrywide also argues that the Debtor granted a lien against her manufactured home by mortgage on September 19, 1998. Even if Countrywide is correct, under 11 U.S.C. § 547, in the case of the granting of a lien, the "transfer" is *deemed to have been made* at the time the lien is perfected, if perfection takes place more than 30 days after creation of the lien. *Kendrick v. CIT Small Bus. Lending Corp. (In re Gruseck & Son, Inc.)*, 385 B.R. 799, *8 (B.A.P. 6th Cir. 2008) (unpub. table) (citing *Waldschmidt v. Mid-State Homes, Inc. (In re Pitman)*, 843 F.2d 235, 238 (6th Cir. 1988)). For purposes of 11 U.S.C. § 547, a transfer of an interest in real property, which is what Countrywide argues the manufactured home here had become, is perfected when a bona fide purchaser cannot acquire an interest superior to the interest of the transferee. *Id.*

Countrywide's filing of a *lis pendens* notice did not create, or perfect, a lien under Kentucky law. *Strong v. First Nationwide Mortgage Corp.*, 959 S.W.2d 785 (Ct. App. Ky. 1998). Assuming, *arguendo*, that the State Court judgment perfected Countrywide's lien, Countrywide's interest became superior to the interest of a bona fide purchaser of the home when the State Court judgment was entered on June 6, 2007. For preference purposes then, the transfer is deemed to have occurred on June 6, 2007. Because this transfer took place within the preference period, it is considered a transfer subject to avoidance as a preference, assuming the other required elements of a preference exist. *Id.*

The Panel concludes that all of the required elements of a preference existed here. It is undisputed that the transfer was for the benefit of Countrywide, a creditor of the Debtor. 11 U.S.C. § 547(b)(1). Given the Panel's conclusion that the transfer took place on June 6, 2007, it clearly was on account of an antecedent debt–the loan advanced by Countrywide well before that date.[6]

---

[6] Although not raised in this appeal, the Panel is aware that an argument might possibly be made that the Countrywide loan was no longer a "debt owed by the debtor" following the Debtor's Chapter 7 discharge, which occurred prior to the State Court judgment. The Panel believes, however, that such argument would not be supported by the

11 U.S.C. § 547(b)(2). Because a debtor is presumed to be insolvent during the 90 days prior to the filing of the bankruptcy petition, and Countrywide did not attempt to rebut this presumption, the Panel must conclude that the Debtor was insolvent at the time of the transfer. 11 U.S.C. § 547(f); 11 U.S.C. § 547(b)(3). As discussed above, the transfer took place during the preference period. 11 U.S.C. §547(b)(4). Finally, the Panel concludes that the transfer, if not avoided, would enable Countrywide to receive more than it would have received in a Chapter 7 liquidation had the transfer not been made. 11 U.S.C. § 547(b)(5). The Panel takes judicial notice of the fact that the Debtor's Chapter 13 plan provides that unsecured creditors will receive less than a 100% distribution on their claims. The transfer in question had the effect of transforming Countrywide from unsecured to secured creditor with respect to the manufactured home, entitling it to 100% of the sales proceeds of the manufactured home in a hypothetical liquidation rather than something less than 100%. The transfer thus enabled Countrywide to receive more than it would have received in a Chapter 7 liquidation had the transfer not been made.

For the foregoing reasons, the Panel concludes that Countrywide's lien clearly was properly avoided under 11 U.S.C. § 547. Accordingly, the Panel need not consider whether the lien was properly avoided under 11 U.S.C. § 522(h) or 11 U.S.C. § 544. Countrywide's extensive arguments with regard to the consensual nature of the lien and the notice and/or *res judicata* issues created by the State Court judgment are, therefore, rendered irrelevant.

## V. CONCLUSION

For the foregoing reasons, the bankruptcy court's order granting judgment in favor of the Appellee is AFFIRMED.

---

Bankruptcy Code. A discharge does not extinguish a debt but merely the debtor's personal liability for that debt. 11 U.S.C. § 524(a). Under 11 U.S.C. § 101(12), "debt" means liability on a claim. Under 11 U.S.C. § 102(2), "claim against the debtor" includes a claim against property of the debtor. Reading 11 U.S.C. §§ 101(12) and 102(2) in conjunction with 11 U.S.C. § 547(b)(2), therefore, the Panel believes that the phrase "debt owed by the debtor" cannot be limited solely to debts for which the debtor is personally liable. That phrase must also include debts–liability on claims–to which a debtor's property is subject. *See In re Gerard*, 2006 WL 288407 (Bankr. E.D. Mich. Feb. 3, 2006).