*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name:  11a0242p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

────────────────

In re:  NANCY E. DICKSON,

                              *Debtor.*

─────────────────────────────────────     No. 10-5580

NANCY E. DICKSON,

                    *Plaintiff-Appellee,*

      *v.*

COUNTRYWIDE HOME LOANS, dba America's
Wholesale Lender,

             *Defendant-Appellant.*

On Appeal from the Bankruptcy Appellate Panel
for the Sixth Circuit.
07-05073—Joseph M. Scott, Jr., Bankruptcy Judge.

Argued:  July 26, 2011

Decided and Filed:  August 26, 2011

Before:  NORRIS, GIBBONS, and GRIFFIN, Circuit Judges.

────────────────

## COUNSEL

**ARGUED:**  John P. Brice II, WYATT, TARRANT & COMBS, LLP, Lexington, Kentucky, for Appellant.  Jon Jay Lieberman, ATKINSON, SIMMS & KERMODE P.L.L.C., Lexington, Kentucky, for Appellee. **ON BRIEF:** John P. Brice II, WYATT, TARRANT & COMBS, LLP, Lexington, Kentucky, for Appellant.  John M. Simms, ATKINSON, SIMMS & KERMODE P.L.L.C., Lexington, Kentucky, for Appellee.

———————————

**OPINION**

———————————

GRIFFIN, Circuit Judge.  Plaintiff-debtor Nancy E. Dickson filed a voluntary Chapter 13 bankruptcy petition on July 16, 2007, seeking to reorganize her debts.  As a part of this process, Dickson successfully sought to avoid a lien on her manufactured home held by defendant-appellant Countrywide Home Loans ("Countrywide").  Before this court, Countrywide appeals the judgment of the Bankruptcy Appellate Panel for the Sixth Circuit ("BAP") affirming the bankruptcy court's judgment and order avoiding Countrywide's lien.  Countrywide asserts that Dickson does not have standing to avoid the lien, and that even if Dickson possessed standing, the lien is not avoidable.  We disagree and affirm.

I.

The BAP recited the facts as follows:

On September 19, 1998, [Dickson] executed a promissory note and mortgage on her real property, which she had purchased in 1997, in consideration for a $79,000 loan from Countrywide.  At the time the promissory note and mortgage were executed there were no improvements on the mortgaged real property.  The mortgage in favor of Countrywide stated that Countrywide was granted a lien against the real property and "all improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of that property."  The mortgage was duly and properly recorded with the Harrison County Clerk on September 22, 1998.  [Dickson] then used the proceeds of the loan to purchase a manufactured home which she placed on the mortgaged real property.

On March 22, 1999, [Dickson] filed a petition for relief under Chapter 7 of the Bankruptcy Code.  On May 13, 1999, the Chapter 7 trustee filed a notice of intent to abandon both the manufactured home and the real property.  [Dickson] was granted a Chapter 7 discharge on September 8, 1999, and the bankruptcy court entered its Final Decree on September 13, 1999.  [Dickson] did not reaffirm the debt with Countrywide.

Subsequently, [Dickson] defaulted on the loan with Countrywide.  As a result, Countrywide initiated foreclosure proceedings on June 15, 2006,

Case 07-05073-jms0 Doc 65 Filed 08/26/15 53 Entered 12/05/16/10 755:05 Desc Main Document    Page 3 of 13

in the Commonwealth of Kentucky Harrison Circuit Court ("State Court").  Countrywide's complaint in the State Court asserted that [Dickson] granted Countrywide a security interest in both the real property and the manufactured home.  Countrywide asserted in its complaint that while the parties intended the mortgage to secure a valid, first lien on the manufactured home, [Dickson] failed to surrender the title to the manufactured home preventing Countrywide from noting its lien on the title. Countrywide sought a judgment from the State Court that it had a valid lien on the home, as well as an order that the home be deemed a fixture on the property and sold in satisfaction of its lien.  On July 13, 2006, Countrywide filed a notice of lis pendens in the office of the Harrison County Clerk which specifically referenced the manufactured home.

On May 25, 2007, Countrywide filed a motion for *In Rem* Judgment in the State Court foreclosure proceeding.  In its motion, Countrywide acknowledged that it had not noted its lien on the certificate of title nor obtained an affidavit of conversion of the manufactured home to real property in accordance with Kentucky Revised Statute § 186A.297.  The motion further sought a judgment from the State Court ordering that the property be deemed converted to real property and sold as part of the real property to satisfy Countrywide's lien.  [Dickson] did not oppose Countrywide's motion.  On June [7], 2007, the State Court granted the *In Rem* motion and [entered] an order finding that Countrywide held a first priority and superior lien against the real property, that the real property be sold to satisfy Countrywide's lien, and that the manufactured home be "deemed converted to real estate and considered to comply with K.R.S 186A.297."  The State Court judgment also ordered that the "County Clerk shall accept for recording an affidavit of conversion from the purchaser of the property, and this Court's order converting the home to real estate, herein.  Alternatively, the Clerk shall issue a new certificate of title to the purchaser of the property."  [Dickson] did not appeal the State Court judgment.

On July 16, 2007, [Dickson] filed a petition for relief under Chapter 13 of the Bankruptcy Code. Countrywide filed a motion for relief from stay seeking to sell [Dickson's] property.  [Dickson] and the Chapter 13 trustee ("Trustee") opposed Countrywide's motion on the grounds that Countrywide failed properly to perfect its lien on the manufactured home.  On October 9, 2007, the bankruptcy court issued an order granting the Trustee thirty days in which to file an adversary proceeding to determine the interest of Countrywide. The bankruptcy court further ordered that if the Trustee did not file such an adversary proceeding, [Dickson] would then have an additional fifteen days to do so.  If no adversary was filed, the stay would be lifted.

The Trustee did not file an adversary proceeding. [Dickson], therefore, filed an adversary complaint pursuant to 11 U.S.C. §§ 544, 547, 550, and 551 on November 14, 2007, in which she asserted that Countrywide did not properly perfect its lien on her manufactured home. On March 20, 2008, Countrywide filed a motion for summary judgment in which it asserted that [Dickson] lacked standing to bring the adversary proceeding because the mortgage lien was consensual and she may not exercise the Trustee's avoidance powers under 11 U.S.C. § 544, that [Dickson]'s claim is barred by res judicata as a result of the actions of the trustee in [Dickson]'s Chapter 7 case in relation to her property, that the *lis pendens* filing provided [Dickson] with constructive notice of Countrywide's lien preventing avoidance, and finally, that the prior State Court judgment prevented avoidance of Countrywide's lien. [Dickson] responded with a cross motion for summary judgment in which she asserted that she had standing as a result of the bankruptcy court's October 9, 2007 order and Countrywide's failure to object to same, that her prior bankruptcy case did not have res judicata effect, that Countrywide's lien on the manufactured home was unperfected because it failed to note its lien on the certificate of title, and that the State Court's judgment did not preclude avoidance of the lien.

Following a hearing on April 29, 2008, the bankruptcy court denied both motions for summary judgment and stated:

> [Countrywide] argues that [Dickson] does not have standing because the mortgage lien is consensual. However, the lien was created by the non-consensual judgment lien; thus, [Dickson] does have standing.
>
> . . .
>
> This Court finds that whether the Defendant holds a valid lien is determined by the intent of the parties at the time of contract formation and whether [Dickson] granted [Countrywide] a lien on the mobile home. There is nothing in the record of this case that demonstrates the intent of the parties or the intent of [Dickson] in not responding to the Motion for *In Rem* Judgment in State Court, nor is there any evidence that [Dickson] granted a lien to [Countrywide] on the mobile home.

Following the bankruptcy court's ruling on the motions for summary judgment, Countrywide took [Dickson]'s deposition and questioned her regarding her intention at the time of contract formation. While [Dickson]'s testimony at that deposition was equivocal regarding her intention to grant a lien to Countrywide on the manufactured home, she ultimately agreed that she was granting a lien on the manufactured home in favor of Countrywide. The deposition of Countrywide's designated

representative, Kelly Darraugh, was also taken. Kelly Darraugh testified that neither she, nor anyone else at Countrywide, had direct knowledge of Countrywide's intention regarding the manufactured home at the time of contract formation, nor had she ever seen the certificate of title or an affidavit documenting affixing of the manufactured home to the real estate.

Subsequently, [Dickson] and Countrywide filed renewed cross motions for summary judgment and moved, via an agreed order, to submit the matter for determination on briefs as if tried before the court. The bankruptcy court then ordered the parties to submit proposed findings of fact and conclusions of law. On April 30, 2009, the bankruptcy court issued a Judgment Order in which it adopted [Dickson]'s proposed findings of fact and conclusions of law and entered judgment in favor of [Dickson]. The adopted conclusions of law concluded, among other things, that [Dickson] had standing, that the only manner in which to perfect a lien on a manufactured home under Kentucky law is by noting the lien on the certificate of title, that Countrywide had failed to perfect its lien, and that even if Countrywide had perfected its lien, such lien was avoidable as a preference.

On May 5, 2008, Countrywide filed a Motion to Amend Findings of Fact and Conclusions of Law and to Alter, Amend, or Vacate the Judgment. In response, [Dickson] filed a motion *nunc pro tunc* for derivative standing. The bankruptcy court granted [Dickson]'s motion, and largely denied Countrywide's motion, granting it only with respect to amending the Court's findings of fact as to a point not at issue here.

*Countrywide Home Loans v. Dickson (In re Dickson)*, 427 B.R. 399, 401-03 (6th Cir. BAP 2010) (footnotes omitted). On appeal, the BAP upheld the bankruptcy court's judgment and order in favor of Dickson, holding that she had derivative standing to avoid Countrywide's lien, which was avoidable as a preference pursuant to 11 U.S.C. § 547. *Id.* at 404-08. This appeal followed.

## II.

We review the decision of the bankruptcy court directly, giving no deference to the decision of the BAP. *Heavrin v. Schilling (In re Triple S Restaurants, Inc.)*, 519 F.3d 575, 578 (6th Cir. 2008). Legal conclusions are reviewed de novo and factual findings are reviewed for clear error. *Id.*

### III.

Our analysis starts with the provisions of Kentucky law governing the perfection of liens on manufactured homes. In Kentucky, a manufactured home is personal property for which a certificate of title is required. Kentucky Revised Statutes ("KRS") § 186A.070; *Citizens Nat'l Bank of Jessamine Cnty. v. Washington Mut. Bank*, 309 S.W.3d 792, 796 (Ky. Ct. App. 2010). In order to perfect a lien on personal property, the lien must be noted on the certificate of title. *See* KRS § 186A.190(2) ("[T]he sole means of perfecting and discharging a security interest in property for which a certificate of title is required by this chapter is by notation on the property's certificate of title[.]"); *Citizens Nat'l Bank*, 309 S.W.3d at 796. However, a manufactured home may be converted from personal property to an improvement to real estate, KRS § 186A.297, thereby allowing perfection through first recording without notice, KRS § 382.110.

In the case at bar, the plain language of the mortgage contract did not grant Countrywide a lien on Dickson's manufactured home as personal property. Rather, the mortgage grants Countrywide a lien on the real estate and "all improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of that property." Accordingly, unless converted to an improvement to real estate, Countrywide did not obtain a security interest in the manufactured home through the mortgage contract.[1] *Turner v. EMC Mortg. Corp.*, No. 2003-CA-002522-MR, 2005 WL 1540158, at *1 (Ky. Ct. App. July 1, 2005) (citing *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829 (Ky. Ct. App. 2001) ("A mortgage is a contract between the borrower and lender subject to the rules of interpretation applicable to contracts. When the language is clear and free from ambiguity, it needs no construction and will be enforced according to its express terms.").

Moreover, even if Countrywide obtained a lien against the manufactured home by way of the mortgage contract, it is undisputed that Countrywide did not note this

---

[1] Countrywide does not assert that Dickson's manufactured home can be considered an easement, appurtenance, or fixture under Kentucky law.

security interest on the certificate of title, and the filing of a *lis pendens*[2] cannot serve to perfect a security interest in a manufactured home. *See Citizens Nat'l Bank*, 309 S.W.3d at 795-96 (holding that the filing of a *lis pendens* does not perfect a security interest in a manufactured home when the home remains personal property); *Strong v. First Nationwide Mortg. Corp.*, 959 S.W.2d 785, 788 (Ky. Ct. App. 1998) (noting that the filing of a *lis pendens* does not create a lien against property or establish priority among creditors). Accordingly, before the state-court foreclosure judgment, Countrywide did not have a perfected lien on Dickson's manufactured home.

On June 7, 2007, the state court entered an in rem judgment and order of sale converting Dickson's manufactured home to an improvement to real property. Countrywide asserts that this judgment created a perfected security interest in the manufactured home. We agree. The state-court judgment "deemed" Dickson's manufactured home to be converted to real estate pursuant to KRS § 186A.297:

> It is ORDERED that the manufactured home, [a] 1998 Champion Pebblebrook II . . . , is deemed converted to real estate and shall be considered to comply with KRS 186A.297. The County Clerk shall accept for recording an affidavit of conversion from the purchaser of the property and this Court's Order converting the property to real estate, herein. Alternatively, the Clerk shall issue a new certificate of title to the purchaser of the property.

Dickson did not appeal this judgment. Accordingly, the conversion ordered in the state-court judgment is binding on Dickson under the doctrine of res judicata, also known as issue preclusion.

"Issue preclusion . . . bars subsequent relitigation of a fact or issue where that fact or issue was necessarily adjudicated in a prior cause of action and the same fact or issue is presented in a subsequent suit." *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589 (6th Cir. 2009). Four requirements must be met before issue preclusion may be applied:

---

[2] "Lis pendens is defined as [a] notice, recorded in the chain of title to real property, . . . to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome." *Greene v. McFarland*, 43 S.W.3d 258, 260 (Ky. 2001) (internal quotation marks and citation omitted).

> (1) the precise issue must have been raised and actually litigated in the
> prior proceedings; (2) the determination of the issue must have been
> necessary to the outcome of the prior proceedings; (3) the prior
> proceedings must have resulted in a final judgment on the merits; and
> (4) the party against whom estoppel is sought must have had a full and
> fair opportunity to litigate the issue in the prior proceeding.

*Id.* at 589-90 (emphasis removed).

Here, Dickson contends that we are free to hold that her manufactured home was not converted to real property pursuant to KRS § 186A.297, asserting that such a holding would not "conflict" with the state-court judgment. This assertion is nonsensical. The state-court judgment unambiguously and unequivocally "deemed" the manufactured home to be "converted to real estate [in compliance] with KRS 186A.297." A holding to the contrary by this court would directly conflict with the state-court judgment on an issue of Kentucky law.

Once converted to real property, the manufactured home fell clearly within the terms of the mortgage contract (granting a security interest in favor of Countrywide on the listed real estate, together with "all the improvements now or hereafter erected on the property"). This mortgage was recorded with the Harrison County Clerk, perfecting Countrywide's interest in the real estate. KRS §§ 382.110, 382.270. Accordingly, upon the entry of the state-court judgment on June 7, 2007, Countrywide possessed a perfected lien on Dickson's manufactured home.

## IV.

Having set forth when and how Countrywide perfected its lien on Dickson's manufactured home, we now analyze whether Dickson has standing to seek its avoidance. A Chapter 13 trustee is authorized to avoid certain property transfers in order to prevent further payment on the debt. *See e.g.*, 11 U.S.C. §§ 544, 547.[3] The Bankruptcy Code also authorizes a debtor to avoid a limited subset of these transfers

---

[3] Chapters 1, 3, and 5 of the Bankruptcy Code apply to bankruptcies filed under Chapter 13. *See* 11 U.S.C. § 103(a).

pursuant to 11 U.S.C. § 522(h).  In the present case, Countrywide asserts that Dickson

does not have standing to avoid its lien under § 522(h).  We disagree.

> Section 522(h) of the Bankruptcy Code provides:
>
> The debtor may avoid a transfer of property of the debtor or recover a
> setoff to the extent that the debtor could have exempted such property
> under subsection (g)(1) of this section if the trustee had avoided such
> transfer, if –
>
> (1)      such transfer is avoidable by the trustee under section 544, 545,
>          547, 548, 549, or 724(a) of this title or recoverable by the trustee
>          under section 553 of this title; and
>
> (2)      the trustee does not attempt to avoid such transfer.

Thus, for a debtor to avoid a transfer under § 522(h), the transfer must be avoidable by

the trustee pursuant to § 522(g)(1), which provides in relevant part:

> [T]he debtor may exempt under subsection (b) of this section property
> that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or
> 553 of this title, to the extent that the debtor could have exempted such
> property under subsection (b) of this section if such property had not
> been transferred, if –
>
> (1)(A) *such transfer was not a voluntary transfer of such property by the
> debtor*; and
>
> (B) the debtor did not conceal such property[.]

(Emphasis added.)  Accordingly, a Chapter 13 debtor has standing to avoid a transfer

under § 522(h) if five conditions are met:  (1) the transfer was not voluntary; (2) the

transfer was not concealed; (3) the trustee did not attempt to avoid the transfer; (4) the

debtor seeks the avoidance pursuant to §§ 544, 545, 547, 548, 549, or 724(a) of the

Bankruptcy Code; and (5) the transferred property is of a kind that the debtor would

have been able to exempt from the estate if the trustee had avoided the transfer under one

of the provisions in § 522(g).  *Kildow v. EMC Mortg. Corp. (In re Kildow)*, 232 B.R.

686, 692-93 (Bankr. S.D. Ohio 1999).

Here, Countrywide asserts that Dickson does not have standing under § 522(h)

because the transfer at issue was voluntarily granted via the mortgage contract.  In

No. 10-5580       *In re Dickson*                                         Page 10

contrast, Dickson argues that the transfer at issue was involuntarily granted via the state-court judgment.  Accordingly, we must identify the relevant "transfer" at issue and then determine whether that transfer was "voluntary."

> The word "transfer" is a term of art in the Bankruptcy Code, defined as follows:
>
> (A)  the creation of a lien;
>
> (B)  the retention of title as a security interest;
>
> (C)  the foreclosure of the debtor's equity of redemption; or
>
> (D)  each mode, direct or indirect, absolute or conditional, voluntary or involuntary of disposing of or parting with –
>
>> (i)  property; or
>>
>> (ii)  an interest in property.

11 U.S.C. § 101(54).  The Supreme Court has noted that this definition is "expansive" because it includes every mode of disposing or parting with a property interest.  *Barnhill v. Johnson*, 503 U.S. 393, 400 (1992).

In this case, Countrywide asserts that the transfer at issue is the mortgage contract.  However, this contract is a *real-estate* mortgage, which by its terms does not encompass personal property.[4]  It was not until the manufactured home was converted to an improvement to real estate, thereby bringing the home within the boundaries of the mortgage contract, that Countrywide obtained a perfected security interest in the manufactured home.  Accordingly, while a transfer in real property did occur through the mortgage contract, the mortgage was not the triggering transfer.  *See Hoffman v. Cent. Pa. Nat'l Bank (In re Hoffman)*, 96 B.R. 46, 47 (Bankr. W.D. Pa. 1988) (noting that "several transfers" may be involved within a single "transaction" as a result of the "broad and comprehensive" definition of the term "transfer").

---

[4] The mortgage contract is unambiguously a real-estate mortgage that does not grant Countrywide a security interest in personal property.  Thus, Countrywide's reliance upon the alleged admissions made by Dickson in her deposition testimony is misplaced.  *See generally Friction Materials Co. v. Stinson*, 833 S.W.2d 388, 391 (Ky. Ct. App. 1992).  Moreover, lay persons, such as Dickson, are not qualified to make legal conclusions.  Fed. R. Evid. 701(c); *Mitroff v. Xomox Corp.*, 797 F.2d 271, 276-77 (6th Cir. 1986).

No. 10-5580       *In re Dickson*                                          Page 11

The transfer in this case that perfected Countrywide's lien on the manufactured home was the state-court judgment. Indeed, prior to the Kentucky judgment, Dickson was the owner of an unencumbered manufactured home. The judgment converted the manufactured home into real property and thus transferred it within the reach of the mortgage contract, subjecting it to foreclosure. Most certainly, this conversion constitutes a "mode . . . of disposing of or parting with . . . an interest in property." 11 U.S.C. § 101(54)(D)(ii).

Having determined the state-court judgment to be the operative transfer at issue, we must next decide whether this transfer was "voluntary." While the Code does not define this term, the bankruptcy courts "have generally concluded, . . . that an *involuntary* transfer 'occurs when . . . property is transferred by operation of law, such as by means of an execution of judgment, repossession, or garnishment.'" *Funches v. Household Fin. Consumer Discount Co. (In re Funches)*, 381 B.R. 471, 493 (Bankr. E.D. Pa. 2008) (quoting *Berman v. Forti*, 232 B.R. 653, 656 (D. Md. 1999)); *see also In re Dipalma*, 24 B.R. 385, 387 (Bankr. D. Mass. 1982) (noting that a transfer created "by operation of law" is involuntary). Here, the judgment was not a consent judgment, but a default judgment. Accordingly, the state-court conversion of Dickson's manufactured home to an improvement to real property was involuntary because it was accomplished by operation of law without consent.

With the exception of the involuntary nature of the transfer resulting in its perfected lien on Dickson's manufactured home, Countrywide does not dispute that Dickson meets all the other requirements to have standing under § 522(h). *In re Kildow*, 232 B.R. at 692-93. Accordingly, we hold that Dickson has direct, statutory standing to seek the avoidance of Countrywide's lien. In view of our holding that Dickson possesses direct standing, it is unnecessary for us to address the issue of whether she possesses "derivative standing" as found by the BAP. *In re Dickson*, 427 B.R. at 404-06.

V.

The final issue is whether Countrywide's lien was properly avoided. Upon review, we hold that it was. Section 547 allows for the avoidance of preferences, which are transfers of property made by the debtor within the 90-day period preceding the filing of the bankruptcy petition. 11 U.S.C. § 547(b). In order to avoid a transfer as a preference under § 547, the transfer must be:

(1)  to or for the benefit of a creditor;

(2)  for or on account of an antecedent debt owed by the debtor before such transfer was  made;

(3)  made while the debtor was insolvent;

(4)  made –

   (A)  on or within 90 days before the date of the filing of the petition; or

   (B)  between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5)  that enables such creditor to receive more than such creditor would receive if –

   (A)  the case were a case under chapter 7 of this title;

   (B)  the transfer had not been made; and

   (C)  such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b)(1)-(5).

"[F]or purposes of § 547 of the Bankruptcy Code, a transfer is *deemed to have been made* at the time the transfer is perfected, if perfection takes place more than 30 days after its creation[.]" *Kendrick v. CIT Small Bus. Lending Corp. (In re Gruseck & Son, Inc.)*, 385 B.R. 799, 2008 WL 1756243, at *8 (6th Cir. BAP 2008) (unpublished table opinion) (citing 11 U.S.C. § 547(e)(2)(B)). In this case, the creation and perfection of Countrywide's interest in the manufactured home occurred at the time of the state-court judgment, which was filed on June 7, 2007. Dickson filed for Chapter 13

bankruptcy on July 16, 2007, placing the state-court judgment well-within the 90-day preference period.

While Countrywide asserts that it perfected its lien outside the preference period through the filing of the *lis pendens*, as described above, a *lis pendens* cannot perfect an interest in personal property, such as a manufactured home. *See Citizens Nat'l Bank*, 309 S.W.3d at 795-96. Other than the timing of perfection, Countrywide does not dispute that all of the other requirements of § 547 are satisfied. Accordingly, we hold that Countrywide's lien on the manufactured home was properly avoided pursuant to § 547.[5]

## VI.

In sum, we hold that Dickson possessed direct statutory standing to avoid Countrywide's lien pursuant to § 522(h), and that the lien was properly avoided pursuant to § 547. On this basis, we affirm the judgment in favor of Dickson.

---

[5] Dickson also asserts that Countywide's lien is avoidable pursuant to § 544. Because we hold that the lien was avoidable pursuant to § 547, we need not address this issue.